# City of Troy *v*. Western Union Tel. Co.

*Action to Recover License Tax.*

(Decided Dec. 21, 1909.   51 South. 523.)

*License; Occupation Tax; Reasonableness.*—A city ordinance imposing a license tax for revenue of $100.00 per year on any telegraph company doing intra-state business within the city cannot be held to be unreasonable, or a manifest abuse of power and thus void, because the intra-state business at such city is conducted at a loss during the year for which the license was required.

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by the Western Union Telegraph Company against the City of Troy to recover license tax paid under protest. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

[City of Troy v. Western Union Tel. Co.]

The facts as found by the judge were that the city of Troy had an ordinance requiring a telegraph company sending messages from the city to any point in the state to pay a tax of $100, and an ordinance adjudging one guilty of a misdemeanor who failed and refused to pay such tax; further, that the plaintiff was a corporation existing under the laws of the state of New York, and engaged in the business of a telegraph company in the different states of the Union, and in the state of Alabama, and that on June 5, 1867, plaintiff filed with the Postmaster General of the United States its written acceptance of the provisions of the acts of Congress approved the 24th day of July, 1866, title to which is set out, and that it is now and has been acting thereunder, and has assumed the restrictions and burdens imposed, and become entitled to the benefits granted by said acts; further, that for many years, and during the year of 1908, and now, it has an office and place of business in the city of Troy, and has been and is now engaged in the business of transmitting messages between private parties, and between the departments and agencies of the United States government, from Troy to other points in the state of Alabama, and to other points outside, and to other states, and to the United States (here follows the license and penalty attached, as set out above); further, that the plaintiff refused to pay said license on the ground that the same is illegal, invalid, arbitrary, excessive, confiscatory, and unjust, whereupon the city of Troy threatened to arrest the plaintiff's manager and operator for doing business without a license, and in order to prevent such arrest and imprisonment the company paid such sum of $100, at the same time protesting that it was not liable, and gave notice that it would bring suit to recover same. It is further found that the lines of the company enter and leave the

city over the right of way of the Central of Georgia Rail-
way Company and the Atlantic Coast Line Company,
both of which are public roads, and that the lines with-
in the city of Troy are on and over the public streets
and highways of said city, except in one instance. It is
further found that the total income of the Troy office
from interstate messages—that is, from messages sent
from Troy, Ala., to points in other states—for the year
1908 amounted to $2,595.01, and that the total income
of messages for the year 1908 from intrastate messages,
which included messages sent from Troy to other points
in the state and money collected at Troy on messages
sent from other points in the state to Troy, were
$548.28, while the total amount received for messages
sent from Troy to other points in the state was $530,
making the total income of said office from business de-
rived from Troy to other points inside the state,
$530.24, and that the amount derived for messages re-
ceived at Troy to be paid for at other points in the state
about equaled the amount of messages sent from other
parts of the state to be paid for at Troy; further, that
the cost of maintaining its office, and doing business in
the city of Troy for the year 1908 were $4,457.72, and
that such expenses were necessary for taking care of all
of plaintiff's business at Troy, both inter and intra
state. It was further found that the plaintiff pays taxes
on its lines and other property in the state at a valua-
tion fixed by the state board of assessment at $50 a mile
for its poles and $32 a mile for its wires, and that the
instruments and other personal property at Troy are
assessed at $140; that it has paid the privilege tax re-
quired by the state of $500, together with $1 per mile
of its lines, which sum aggregates $4,252; that the of-
fice of the company is 11 feet 5 inches wide, and 90 feet
long, located at No. 106 East Elm Street, and that the

population of the city of Troy, estimated January 1, 1908, was approximately 5,500.

FOSTER, SAMFORD & CARROLL, for appellant.—The city of Troy by its charter, had authority to levy tax, and the only limitation is that it must not be so unreasonable as to show a purpose to prohibit a business which is not in itself injurious to the public health or morals.—*City of Birmingham v. Goldstein*, 151 Ala. 477. As to whether or not the company did a losing business so far as intra-state business is concerned is not the proper criterion to determine whether the ordinance is prohibitive or not. —*R. R. Co. v. City of Attalla*, 118 Ala. 368; *Miller v. Montgomery*, 151 Ala. 471. We, therefore, insist that the court erred in holding that the ordinance was unreasonable and prohibitive. That the municipality has authority to impose this tax, and as to the reasonableness thereof, see.—*Moore v. Eufaula*, 97 Ala. 670; *Postal Co. v. Charleston*, 153 U. S. 692; *Western U. v. Texas*, 105 U. S. 460.

GEORGE H. FEARONS, BROWN & WELLS, RAY RUSHTON, and W. M. WILLIAMS, for appellee. The ordinance is unreasonable and, therefore, void.—*Ex parte Byrd*, 84 Ala. 12; *Hendricks v. The State*, 142 Ala. 43; *Marion v. Chandler*, 6 Ala. 899; *Ex parte Frank*, 52 Cal. 606; *Postal Tel. Co. v. Newhope*, 192 U. S. 55. The ordinance does not concern itself with inter-state business, and we are, therefore, concerned only with the receipts from intra-state business, and under the evidence the license was prohibited.—*Laloop v. Port of Mobile*, 153 U. S. 640.

SIMPSON, J.—The city of Troy, by ordinance, requires any telegraph company doing intrastate business

in said city to pay license tax of $100. The appellee paid said tax under protest, to save its agent from criminal prosecution, and sued the city for the money, on the ground that the ordinance is void, by reason of the unreasonableness of the amount of said license. The case was tried by the court without a jury, on an agreed statement of facts, the substance of which will be set out by the reporter in the statement of this case.

The business of the appellee not being of that class calling for police regulation, this license tax must be considered as of that class which is levied for revenue. While it has been held that the uniformity clause of our Constitution, in regard to taxes, does not apply to license taxation, yet that does not mean that there is no limit to the powers of a municipal corporation in levying license taxes. It is laid down as a general proposition that all municipal ordinances must be reasonable, yet a broad discretion must be allowed, and it is difficult to formulate any definite rule as to what is reasonable and what is not.—*Postal Tel. Cable Co. v. New Hope,* 192 U. S. 55, 24 Sup. Ct. 204, 8 L. Ed. 338; *Ex parte Byrd,* 84 Ala. 18, 4 South. 397, 5 Am. St. Rep. 328; *Mayor, etc., of Mobile v. Yuille,* 3 Ala. 137, 143, 36 Am. Dec. 441; *Atlantic etc. Tel. Co. v. Philadelphia,* 190 U. S. 160, 167, 23 Sup. Ct. 817, 47 L. Ed. 995 Even in regard to the police powers of the state, the Supreme Court of the United States has said, "The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations."—*Lawton v. Steele,* 152 U. S. 137, 14 Sup. Ct. 501 (38 L. Ed. 385).

In the case of *N., C. & St. L. Ry. v. City of Attalla,* 118 Ala. 362, 368, 24 South. 450, 452, this court recognizes the proposition that a license tax levied by a city

under authority of law must be reasonable, but holds that "the reasonableness or unreasonableness of a license tax cannot be determined by the extent of the business of a single individual. There may be competition or negligence on his part, or other considerations affecting the extent of the business of complainant." That was a bill to enjoin the enforcement of a city ordinance affixing a penalty for engaging in the business of transporting passengers, etc., without a license. The report of the case does not show what the averments of the bill were as to reasonableness, nor that the complainant was the only person or corporation engaged in the business in said city. The expression quoted from the *Attalla Case* is quoted with approval in the case of *N., C. & St. L. Ry. v. Ala. City,* 134 Ala. 414, 420, 32 Soutth. 731, 733, which case also fails to state whether or not there was any other railroad at the place in question.

It is claimed by the appellant that, unless discrimination is shown between persons of the same class, the only limit to the right of taxation by license is that it shall not be prohibitive. It is true that there are expressions in some of the cases which refer to that as the criterion, and yet there are expressions in others which refer to the further qualification that no unreasonable burden shall be placed on any business. In the case of *Quartlebaum v. State,* 79 Ala. 4, in sustaining a license tax on sewing machine companies, this court said: "Much must be left to the discretion of the Legislature, for exact equality of taxation can never be reached. So long as the burden falls with equal weight upon every member of a given class, * * * it is difficult to formulate an argument that such levy violates any provision of our own or of the federal Constitution."

In the case of *City Council of Montgomery v. Kelly,* we quoted the passage, above cited, from *Lawton v.*

*Steele,* 152 U. S. 137, 14 Sup. Ct. 499, 38 L. Ed. 385, and held that an additional burden could not be placed on merchants using trading stamps.—142 Ala. 552, 558, 38 South. 67, 69 (70 L. R. A. 209, 11 0Am. St. Rep. 43). In that case we said that liberty "includes the right to pursue any useful and harmless occupation, and to conduct the business, in the citizen's own way, without being discriminated against either by being prohibited from engaging in it, or by being burdened with discriminative taxation." In the case of *Kendrick v. State,* 142 Ala. 43, 46, 39 South. 203, 204, in which we sustained a license tax on emigrant agents, recognizing the right of classification, we stated the question to be "whether or not * * * the license tax imposed is so excessive and unreasonable as to amount to a prohibition of the business or, in the language of the Supreme Court of United States in *Lawton v. Steele,* 152 U. S. 137 [14 Sup. Ct. 499, 38 L. Ed. 385], 'under the guise of protecting the public interests, arbitrarily to interfere with private business, or impose unusual and unnecessary restrictions upon a lawful occupation,' " and, as the record did not furnish the data from which the court could say that the license was discriminative beyond the legislative power, it was held good. In the case of *Gamble v. City Council of Montgomery,* 147 Ala. 682, 684, 39 South. 353, in sustaining the license tax required of trading stamp companies, we said : "In the case at bar we have no evidence that the tax imposed is unreasonable or prohibitive. So far as we know, the defendant could well afford to pay the tax and conduct a lucrative and profitable business.

The Supreme Court of Mississippi, in deciding that an ordinance requiring skating rinks to close at 6 p. m. and not to open before 6 a. m. was void, because unreasonable, said, "Into every charter power given a munic-

ipality to pass by-laws or ordinances there is an implied restriction that the ordinance shall be reasonable, consistent with the general law, and not destructive of a lawful business," and also quotes from Freund on Police Power, § 63, as follows: "There is implied, in every delegation of power to a municipal corporation, a condition that the power must be exercised reasonably, and that therefore every unreasonable ordinance is ultra vires, and that the court in treating it as null and void merely enforces the legislative will, and principles or policies embodied in it." Also from section 158: "The requirement of reasonableness is so general in its nature that it allows the courts to exercise a very efficient control over ordinances, without being under the necessity of formulating in each case a principle which would be a guide for other cases."—*Johnson v. Town of Philadelphia*, 47 South. 526, 527 (19 L. R. A. [N. S.] 637). On the other hand, "the power to license an occupation or privilege implies the right to fix the amount of the fee, and the action of a municipal body in fixing a fee will only be disturbed, in case of manifest abuse of that power."—*Schmidt v. City of Indianapolis*, 168 Ind. 631, 80 N. E. 632, 635, 636, 14 L. R. A. (N. S.) 787, 120 Am. St. Rep. 385; *Van Hook v. City of Selma*, 70 Ala. 361, 365, 45 Am. Rep. 85; *Miller v. Mayor, etc., of Birmingham*, 151 Ala. 469, 471, 44 South. 388, 125 Am. St. Rep. 31; *Mayor, etc., of Birmingham v. Goldstein*, 151 Ala. 473, 477 44 South. 113, 12 L. R. A. (N. S.) 568, 125 Am. St. Rep. 33.

While the business of 1098 shows that the telegraph company at Troy was run at a loss, in so far as intrastate business is concerned, yet it is not shown that such is a proper criterion as to the business of a telegraph company from year to year in that city. Moreover, in the estimate of expenses, a proportionate part of the

office expenses is included, which would have to be paid at any rate, whether any intrastate business was done or not; and we cannot say that the fixing of this license tax was a manifest abuse of power.

The judgment of the court is reversed, and the cause remanded. All the Justices concur.