(81 South. 199)

WESTERN UNION TELEGRAPH CO. v. CITY OF DECATUR.   (8 Div. 422.)

(Court of Appeals of Alabama.   Nov. 12, 1918. On Rehearing, Dec. 17, 1918.)

1. LICENSES ☞8(2)—POWER TO LEVY PRIVILEGE TAX—STATUTE.

Acts 1911, p. 159, § 1, as to telegraph companies not being liable for additional privilege tax, "except licenses required by cities and towns," does not operate as an abridgment of powers conferred on cities and towns by Code 1907, § 1339, to the extent of withdrawing the power to levy a privilege tax on telegraph companies for the purpose of raising revenue.

2. COMMERCE ☞69—INTRASTATE COMMERCE—LICENSE TAX—TELEGRAPH COMPANIES.

Ordinance levying a tax on intrastate business of defendant telegraph company transacted within the corporate limits of the city, but especially exempting from its operation interstate and government business, does not interfere with interstate or government business.

3. TELEGRAPHS AND TELEPHONES ☞30 — TELEGRAPH COMPANIES—LICENSE TAX—EXEMPTIONS.

Defendant telegraph company cannot claim immunity from taxation, under ordinance imposing ·a tax on its intrastate business transacted within the corporate limits of city, because of an 'acceptance by it of the provisions of Post Road Act Cong. July 24, 1866 (U. S. Comp. St. §§ 10072–10077).

4. LICENSES ☞7(9)—OCCUPATIONS—REASONABLENESS.

The power to tax for revenue, and combine such power with the police power, may not be so used as to embarrass and destroy useful and harmless trades and occupations.

5. LICENSES ☞35—BUSINESS OR OCCUPATION TAX—JUDICIAL RELIEF.

The courts will in a proper case declare void any ordinance levying a tax upon a business or occupation that is prohibitive and destructive.

6. CONSTITUTIONAL LAW ☞48 — PRESUMPTIONS—VALIDITY OF ACTS AND ORDINANCES.

Presumption will be indulged that legislative acts and ordinances are reasonablé and valid, and it is incumbent upon one who assails such acts or ordinances to overturn this presumption.

7. LICENSES ☞7(9)—OCCUPATION TAX—REASONABLENESS.

Reasonableness of a tax upon an occupation or business, or of an ordinance, cannot be determined by the extent of the business of a single individual, since there may be competition, or negligence, or other considerations' affecting the extent of the business, which cannot be charged to the taxing power.

8. PLEADING ☞34(4)—CONSTRUING AGAINST PLEADER.

Averments of defendant's plea, questioning ordinance upon the ground that it is unreasonable, must, on demurrer, be construed most strongly against the pleader.

On Rehearing.

9. LICENSES ☞8(2)—·PRIVILEGE TAX—STATUTE—REPEAL.

Code 1907, § 1339, authorizing cities and towns to levy a privilege tax for revenue, was not repealed by Acts 1911, p. 159, providing for a privilege tax on intrastate business of telegraph companies.

10. LICENSES ☞32(2)—TAX—ENFORCEMENT—PLEADING—INVALIDITY OF ORDINANCE.

Defendant telegraph company's pleas, attacking validity of ordinance levying a tax on defendant's intrastate business transacted within corporate limits of city, were defective, where they failed to aver that defendant at the particular office conducted its business with reasonable care and diligence, and to this end made and collected for ·all intrastate service the usual and customary charges.

11. EVIDENCE ☞18, 20(2)—JUDICIAL KNOWLEDGE—TELEGRAPH RATES.

While the courts will take judicial notice as to the minimum charge made by telegraph companies in the state between given points, it will not take judicial notice of the volume of business conducted at a particular telegraph office, that the company and its agents have frugally conducted the business, or that a particular agent has acted with reasonable diligence.

Bricken, J., dissenting.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Action by the City of Decatur against the Western Union Telegraph Company. From the judgment rendered, the Telegraph Company appeals. Affirmed.

Certiorari denied 81 South. 205.

Francis N. Whitney, of New York City, Eyster & Eyster, of Albany, and Rushton, Williams & Crenshaw, of Montgomery, for appellant.

Callahan & Harris, of Decatur, for appellee.

BROWN, P. J. [1] The Legislature, in the general revenue bill approved March 31, 1911, laid a privilege tax on intrastate business done by telegraph companies in this state, predicating the amount of the tax on a graduated mileage basis, and provided therein that—

"No telegraph company which has paid the privilege tax herein required shall be liable to pay any additional privilege tax in this state, *except licenses required by cities and towns.*" Acts 1911, p. 159, § 1.

Appellant contends that this act operates as an abridgment of the power conferred on cities and towns by the provisions of section 1339 of the Code, to the extent of withdrawing the power to levy a privilege tax on telegraph companies for the purpose of raising revenue, limiting their authority to matters of regulation under the police power. This section of the Code expressly provides that—

"The power to license, conferred by this article, may be used in the exercise of the police power as well and for the *purpose of raising revenue, one or both.*"

As we understand the appellant's contention, it is not that this section of the Code is repealed by implication entirely, but that the effect of the general revenue law is to amend this section of the Code, by striking from it the pertinent provision that privilege taxes may be levied by municipalities for *the purpose of revenue.* This contention runs counter to the provisions of section 45 of the Constitution, that—

"No law shall be revived, *amended*, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, *amended*, extended, or conferred, shall be re-enacted and published at length."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

While the act lays a restriction against other subordinate government agencies in levying privilege taxes for state or county purposes, on the business or occupation of engaging in intrastate telegraphing, the manifest purpose of the quoted exception was to leave intact the power conferred on cities and towns by section 1339 of the Code, and the mere fact that the exception refers to the power of municipalities "to license" evidences no intention to deprive them of the power to levy a tax for revenue, or restrict their authority to licensing under the power of police. As was said in Kendrick v. State, 142 Ala. 45, 39 South. 203:

"Under our statutes, all occupation taxes are evidenced by a receipt which is called a license, so that we do not think that the fact that this is spoken of in the act, as a license, renders the act any the less a tax on the occupation for revenue."

[2, 3] The ordinance in question merely levies a tax on the intrastate business of the appellant, transacted within the corporate limits of the city of Decatur, especially excepting from its operation interstate and government business; therefore the defenses sought to be interposed by some of the pleas that the ordinance interferes with interstate or government business cannot be sustained. Postal Tel. Co. v. Charleston, 153 U. S. 692, 14 Sup. Ct. 1094, 38 L. Ed. 871. Neither can the defendant claim immunity from taxation under such ordinance, because of an acceptance by it of the provisions of the Post Road Act of Congress, approved July 24, 1866 (14 Stat. 221, c. 230 [U. S. Comp. St. §§ 10072–10077]); Postal Tel. Co. v. Charleston, supra; Williams v. City of Talladega, 164 Ala. 633, 51 South. 330; City of Troy v. Western Union Tel. Co., 164 Ala. 482, 51 South. 523, 27 L. R. A. (N. S.) 627; Williams v. City of Talladega, 226 U. S. 404, 33 Sup. Ct. 116, 57 L. Ed. 275; City of Anniston v. Southern Railway Co., 112 Ala. 557, 20 South. 915.

It is universally recognized that the power to tax for revenue is essentially an attribute of sovereignty conferred by the people, through the Constitution, on the state, and vested in the legislative department, which it may exercise within constitutional limitations without restraint or judicial supervision. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; Barefield v. State, 79 South. 396;[1] Dunlap v. State, 78 South. 638.[2] And the courts recognize the right of the state to so combine the exercise of this power with the power of police as to embarrass and destroy businesses and occupations recognized as being hurtful to public morals, productive of disorder or injurious to the public good. City of Montgomery v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Cooley on Taxation (2d Ed.) p. 20; Tiedeman on Limitation of Police Power, 273, 277, 278.

[1] Ante, p. 491.     [2] Ante, p. 440.

[4] However, this power may not be so used as to useful and harmless trades and occupations so essential to the liberty of the citizen in the pursuit of happiness. The very fact that the power of taxation is conferred as a matter of legislative authority for the purpose of raising revenue to meet the legitimate expenses and needs of the government is antagonistic to the idea that it may be used to embarrass and destroy useful and harmless occupations, that are essential to the prosperity of the people, and thus defeat the very purpose for which the power is conferred.

The liberty which is so sedulously guarded by the Constitution of the United States and of this and other states comprehends more than the mere freedom from personal restraint. It includes the right to pursue any useful and harmless occupation and to conduct the business in the citizen's own way, without being discriminated against, either by being prohibited from engaging in it or being burdened with the discriminative taxation. City Council of Montgomery v. Kelly, supra; City of Troy v. W. U. Tel. Co., 164 Ala. 486, 51 South. 523, 27 L. R. A. (N. S.) 627; Rhodes v. McWilson, 79 South. 462; Standard Chem. Co. v. City of Troy, 77 South. 383, L. R. A. 1918C, 522.

While the general rule is that there is no limit to the power of the Legislature to levy an occupation tax under the taxing power, other than the necessities of the public treasury and the discretion of the legislative body exercised within constitutional limits, the weight of authority supports the view, particularly when the tax is imposed by a municipal ordinance, that it must stop short of confiscation, and must not be so oppressive as to prohibit the individual from following the ordinary harmless and useful occupation. Dil. Mun. Corp. (15th Ed.) § 1408; City of Troy v. W. U. T. Co., supra; Van Hook v. City of Selma, 70 Ala. 361, 45 Am. Rep. 85; Kendrick v. State, 142 Ala. 43, 39 South. 203; Ex parte Burnett, 30 Ala. 461; Ex parte Bryd, 84 Ala. 17, 4 South. 397, 5 Am. St. Rep. 328; McQuil. Mun. Corp. 731, 794.

[5] It necessarily follows from these principles that the courts will, in a proper case, declare void any ordinance of a municipal corporation levying a tax upon a business or occupation that is prohibitive and destructive of the business. It is a power, however, that courts should cautiously exercise, and to justify interference, a flagrant case of excessive and oppressive abuse of power, resulting in the prohibition of a useful and harmless occupation or trade must be shown. Commonwealth v. Robertson, 5 Cush. (Mass.) 438; McQuil. Mun. Corp. 731; Kendrick v. State, supra; Caldwell v. Linden, 19 Neb. 569, 27 N. W. 647; Dil. Mun. Corp. § 1408; Lyons v. Cooper, 39 Kan. 324, 18 Pac. 296.

[6] Because of the broad discretion vested in such legislative bodies, the presumption will be indulged that their acts and ordinances are reasonable and valid, and it is incumbent upon one who assails such act or ordinance to overturn this presumption. City of Troy v. W. U. Tel. Co., supra; Van Hook v. City of Selma, supra; McQuil. Mun. Corp. 731, 794; Standard Chem. Co. v. City of Troy, supra.

[7] The reasonableness or unreasonableness of such tax or ordinance cannot be determined by the extent of the business of a single individual. There may be competition or negligence or other considerations affecting the extent of the business which cannot be charged to the taxing power. N., C. & St. L. v. Attalla, 118 Ala. 364, 24 South. 450; N., C. & St. L. v. Ala. City, 134 Ala. 414, 32 South. 731; City of Troy v. W. U. T. Co., supra.

[8] When the averments of the defendant's pleas questioning the ordinance upon the ground that it is unreasonable are construed most strongly against the pleader, as must be done on demurrer, they are subject to the objection pointed out by the demurrer, that the defendant had not acquitted itself of negligence in the conduct of its business, by averring that it made and collected reasonable charges for all intrastate business transacted by it through its office in the city of Decatur. When the principles stated above are applied to the other pleas of the defendant, it is manifest that the demurrers were properly sustained thereto. Standard Chem. Co. v. Troy, supra.

This disposes of all the questions presented by the assignments of error, and, finding no error in the rulings of the trial court, the judgment appealed from will be affirmed.

Affirmed.

BRICKEN, J. (dissenting). I think the whole case rests upon the single point whether the appellee had the power to levy the tax in controversy as a privilege tax, i. e., one for revenue, or as a license tax in name, but really one for revenue.

In the general revenue bill (Acts 1911, p. 159), a privilege tax based on mileage is provided for against telegraph companies, and it enacts that no telegraph company paying the state tax shall be liable to pay "any additional privilege tax, except licenses required by cities and towns."

The point is made that this exempted appellant from this privilege tax, but the lower court decided that it did not, and overruled the demurrers to the complaint, and sustained them to the pleas setting up this defense. The writer is of the opinion that the defense is good, and that this question is decisive of this appeal.

It is evident that it is highly improper to exercise an unlawful power by giving it a name, merely, inconsistent with its real nature. The judiciary in Alabama have accepted the distinction between the two taxes shown, in the case of Van Hook v. City of Selma, 70 Ala. 361, 45 Am. Rep. 85, as being that the privilege tax is one for revenue, while the license tax is merely for regulation and police supervision. And it is highly essential that the substance of things shall not be confused by giving them names merely, not signifying or conforming to their nature.

The state has no power whatever to collect revenue from subjects not open to it for taxation, yet it may regulate or police such matters and exact a license tax for such purpose; such tax, however, being of so light a nature as it may not possibly interfere with or burden the exercise of the business, being merely to pay the cost of a necessary police protection.

And there is another distinction, recognized by all the courts, viz.: That a power to tax for revenue must be reasonably exercised under the controlling, though implied, limitation that taxes for revenue are levied on individual units of society for the necessary purpose of governmental protection of the whole society, and must not be so exercised as to amount to a practical confiscation.

In considering the nature of the tax in question in this case, it should be noted that the city of Decatur is a comparatively small municipality, and the nature of the business taxed is one not calling for a large and expensive police supervision or regulation. It is usually conducted in small cities by a few men or women in quiet offices, in sending and receiving messages by electric wires, and a few boys to carry and receive messages. There is no crowd to supervise or regulate, no inducements to turbulence or misconduct of any sort. In fact, the business cannot be conducted, except in quiet and orderly offices. It is not necessary to reasonably incur more than nominal expense in the policing of a telegraph business in a small city of some 5,000 or 6,000 inhabitants in a state where inebriety is prohibited by its laws and made highly penal. And when a tax in its effect exceeds greatly such nominal cost of policing, and eats into and practically appropriates all or the greater part of the profits of the business conducted on the most economical basis, there is no escaping the fact that the tax is in fact one in its nature levied for revenue, and that calling it one for policing regulation is an evasion and a subterfuge.

The pleas in this case show the tax in question a privilege tax, or one for revenue; and conceding all the rights and privileges of a legislative body to tax its subjects heavily, the writer simply looks, in the first place, into the right of the appellee to levy this privilege tax, for it is not a license tax, though so named.

It is admitted that the Legislature and the courts have not always preserved the distinctive difference between the two taxes in speaking generally of taxation; but the distinction exists, and is recognized, when attention is called to the necessity of discriminating between them.

The taxation by a city is really indirectly by the state, and to serve state purposes, in a large sense. The city live's by and through and for the purposes of the state, and its power to levy taxes is by its permission and ·by its authority. When the Legislature speaks, and uses plain language, which cannot be changed or warped from its plain and ordinary meaning, except when a different or narrower or larger meaning is necessary to avoid absurdity or calamity, courts are no more at liberty to misunderstand the command which the language imparts than a soldier is authorized to disobey lawful orders of his superior officer by taking a by-path when ordered to follow the main road.

There the state levies a privilege tax on lines of telegraph companies extending through its entire area, and says, in effect, that this tax is maximum levy for revenue, and "no telegraph company which has paid this tax shall be liable to pay any additional privilege tax in this state, etc., *in* this state" (not to this state). Notwithstanding the appellee brings an action of assumpsit based upon two ordinances set out in the record, in which the levies are called "a license or privilege tax" of $200 per annum.

It appears to the writer as being nothing short of a quibble or subterfuge to say that an additional privilege tax may be levied by cities and towns by calling the tax "a license tax."

The Legislature discloses in its language that it had in mind taxation by cities, and not merely taxation by counties, for it said, in substance: But this tax for revenue by us shall not interfere "with *licenses* by cities."

Our courts are not at liberty to evade this command of our law given by the Legislature, and it is clear to the writer, under the pleas in this case, that this is a tax for revenue, and not a license for police regulation, and for this reason it was unlawfully levied by the appellee against the appellant.

### On Rehearing.

PER CURIAM. The application for rehearing is rested upon two grounds:

That the court erred "(1) in holding that the municipality was legally authorized to levy a privilege tax for revenue upon telegraph companies in this state; (2) in holding that the pleas setting up the unreasonableness of the license tax are bad for failing to aver that the charges made for intrastate service were reasonable."

[9] To sustain the first ground, the contention is now made that the provisions of section 1339 of the Code authorizing cities and towns to levy a privilege tax for revenue was repealed by the act of 1911 by implication. There is no room for the application of the doctrine of implied repeal in the face of the express declaration, excepting licenses required by cities and towns. Lewis' Sutherland, Statutory Construction, § 247. Our utterances in the original opinion fully answer the first ground of the application.

[10] The second ground of the application, and the argument in support thereof, is founded on a misconception of the court's holding, which was not that the pleas were defective for failing to aver that the charges actually made for intrastate services were reasonable, but, the burden being upon the defendant to overturn the presumption that the ordinance was reasonable, it was necessary for the pleas to aver that the defendant, at this particular office, conducted its business with reasonable care and diligence, and to this end made and *collected* for all such service the usual and customary charges.

[11] While the courts will take judicial knowledge as to the minimum charge made by telegraph companies in this state between given points (Western Union Tel. Co. v. Saunders, 164 Ala. 245, 51 South. 176, 137 Am. St. Rep. 35), this rule cannot be extended so as to require them to take judicial notice of the volume of business conducted by a telegraph company at a particular telegraph office, or that the telegraph company and its agents have frugally conducted the business of the office, nor that a particular agent of a telegraph company has acted·with reasonable diligence in respect thereto. The averments of a plea are construed most strongly against the pleader, and all intendments are resolved against him. Scharfenburg v. New Decatur, 155 Ala. 651, 47 South. 95; Argo v. Sylacauga Merc. Co., 12 Ala. App. 442, 68 South. 534.

Application overruled.