## In re CLARK'S GUARDIANSHIP. NEW AMSTERDAM CASUALTY CO v. CLARK'S ESTATE.

No. 14094—Opinion Filed Oct. 14, 1924.

Rehearing Denied Dec. 2, 1924.

**1. Guardian and Ward—Liability of Guardian for Trust Fund Lost in Failed Bank.**

A guardian, who permits a third person to take charge of a trust fund belonging to his ward, and to deposit such fund in a bank otherwise than in the name of the trust estate, and without anything to indicate that the deposit was made in his representative capacity as trustee. is liable to his ward, for the loss of the fund through a failure of the bank. without regard to the good faith or intention of the guardian in making the deposit.

**2. Same—Mother as Guardian of Minor—Right to Credit for Expense of Maintenance.**

Where a mother who had been appointed guardian of her minor son had made no charge against him for money expended for his support and maintenance, and obtained no authority from the county court to expend monies belonging to such child for his support, no credit can be allowed therefor, after her removal as guardian, at the instance of a surety upon her bond, as guardian, upon exceptions filed by such surety to her final report.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Cherokee County; J. H. Jarman, Judge.

In the matter of the Guardianship of Levi Scott Clark, a minor. Action by the New Amsterdam Casualty Company, a corporation, against the Estate of Levi Scott Clark, a minor, defendant. Judgment for defendant, and plaintiff appeals. Affirmed.

Kent V. Gay, for appellant.

Bruce L. Keenan, for appellee.

Opinion by FOSTER, C. This controversy grows out of exceptions to the final report of Mary A. Clark, as guardian of Levi Scott

Clark, a minor, filed by the New Amsterdam Casualty Company, a corporation, as surety upon an additional bond executed by such guardian in connection with the sale of certain real estate belonging to the minor. The county court of Cherokee county, Okla., charged the guardian with the sum of $1,600, representing the proceeds from the sale of certain real estate belonging to the minor which had been lost through the failure of the Central National Bank of Tahlequah, in which bank the funds had been deposited by J. D. Cox, county judge of Cherokee county; credited the guardian with certain amounts, and found that said guardian and her surety were due to account to the minor for a balance of $1,128.30.

An appeal was prosecuted by the surety to the district court of Cherokee county, Okla., wherein the court, upon a trial to the court on the 11th day of September, 1922, entered judgment, charging the guardian and her surety with the said sum of $1,600; representing the proceeds from the sale of the real estate mentioned, refused the guardian credit for a certain sum which it was claimed had been expended by the guardian for the support and maintenance of said minor during her tenure of office as guardian, and ordered the guardian and her surety, New Amsterdam Casualty Company, to account and pay D. O. Scott, guardian, as the lawful successor of Mary A. Clark, the sum of $1,087.76.

At the request of the surety, the trial court made certain findings of fact and conclusions of law, the material parts of which, are as follows:

"Findings of Fact.

"* * * That after that proceeding (referring to the probate sale) was had and a guardian's deed executed from the guardian to the purchaser, and as a part of the same transaction in which the guardian's deed was executed, the purchaser, together with the guardian, appeared in the office of the county judge of Cherokee county, to close the proceedings, and the purchaser, in the presence of and with the knowledge of the guardian, paid into court, by check, the sum of $1,600. That guardian's deed was delivered to the purchaser. That such payment by the purchaser was in effect a payment of the purchase price to the guardian. This is now an action between the minor, or rather a settlement of the account, between the minor and the guardian. The guardian did not take possession of or obtain control of this $1,600, but permitted the same to be taken charge of and under the control of the county judge, who from the evidence here, deposited this amount in the Central National Bank of Tahlequah, Okla., to his account,

as county judge. That these funds, at no time were deposited in the name of the guardian, or of the ward. * * * That with regard to the claim for board, or for the maintenance and support of this minor, the court finds that this minor, together with the guardian, his mother, and other members of the family, resided upon a farm and that no expenditures were made, or included, by this guardian, for the maintenance and support of this minor, except such as were taken care of and paid by the efforts of this minor, together with the efforts of other members of the family, in the growing of farm products which were sold to take care of the family expenses and that such charges were—— would not be a legal charge and the guardian is not entitled to credit for maintenance and support of this minor.

"Conclusions of Law.

"As a conclusion of law, the court finds and holds that when this sum of $1,600 was paid in court under the sanction and approval of the guardian, that it was then the duty of the guardian, under her oath as guardian, and in the discharge of the legal duties due this ward, to whom only the minor could look for protection to have taken charge of this fund and to have safeguarded it in the manner as the law contemplates, and as her duty required her to do; and, by her failure to take charge of the funds, was such negligence on her part, as to render her and hold her accountable to this minor for this sum, which is the proceeds of the sale of the land in question.* * *"

Motion for a new trial was filed and overruled, and the New Amsterdam Casualty Company brings the cause regularly on appeal to this court on petition in error and case-made.

Appellant discusses its assignments of error under two propositions, as follows:

(1) That Mary A. Clark, guardian, is not properly chargeable with the sum of $1,600 derived from sale of real estate belonging to Levi Scott Clark, a minor, for the reason that she exercised the care and diligence in the preservation of such fund which would have been exercised by an ordinarily prudent business man, and that the loss of said sum was not occasioned by any fault, neglect, or dereliction of duty upon her part.

(2) That the court, as a matter of common justice and equity and upon application of the surety on a guardian's bond, even in the absence of a request from the guardian, must credit said guardian's account with reasonable amounts which have been expended by such guardian for the support, maintenance, and education of the minor ward when it is shown that such expenditure, considering the financial condition of the guardian

and parent, is such as to entitle the guardian and parent to such allowances if applied for by her.

Appellant states in its brief, as follows:

"* * * Appellee seems to have gotten the impression that plaintiff in error seeks to overturn the findings of fact made by the district court. This is not true as there is little or no dispute as to what actually happened at the time of the sale of real estate of Levi Scott Clark, a minor, and at the time of the delivery of guardian's deed."

The scope of our inquiry then is, Did the trial court err as a matter of law in its conclusion of law that the guardian, by permitting the county judge of Cherokee county to take charge of the proceeds of the sale of the real estate of her ward, and in permitting him to deposit these funds in the Central National Bank of Tahlequah to the credit of a person other than the guardian or the ward, fail to exercise that care and diligence in the preservation of such funds as would render her accountable to her ward for a loss of such funds through a failure of the bank in which the funds were deposited?

It is emphasized in the argument that the deposit of these funds by the guardian to the credit of J. D. Cox as county judge negatives bad faith and want of care, since the county judge under the law exercises general jurisdiction of the estates of minors and dependents. This argument, however, is in our judgment without merit. It is generally held that a guardian and his surety are liable to the ward where the guardian deposits funds belonging to his ward in a bank in his individual name, notwithstanding the guardian is guilty of no negligence, where the funds are subsequently lost through a failure of the bank. Church on Probate Law and Practice, vol. 1, page 358, (2nd. Ed.) ; In re Wood's Estate, 150 Cal. 466, 144 Pac. 992.

The reason for the rule is correctly stated in 26 R. C. L., page 1315, as follows:

"A trustee must be careful to make the deposits in the name of the trust estate, and not to his personal credit, if he would avoid personal liability in case of failure of the bank. In such a case the good faith or intention of the trustee is in no way involved. Having for his personal convenience, or from whatever motive, deposited the money in his own name, thereby vesting himself with a legal title, it follows as a necessary consequence, when a loss occurs, he will not be permitted to say, as against his cestui que trust, that the fact is not as he voluntarily made it appear, and it is immaterial that he

informed the bank at the time of making the deposit that the funds were held by him in trust. But the test is not so much the keeping of a separate account at the bank, as it is the parting with, and hence the losing of the identity of, the trust fund, and having in lieu thereof no obligation, contract or account on which is impressed the equitable ownership of the trust."

The guardian of a minor, not the county judge, is the custodian appointed by law for the control of the ward's funds. A deposit of funds belonging to a ward in the name of an individual not made responsible by law for the safeguarding of such funds, even though such deposit is made in the name of a public officer having general jurisdiction over the estates of minors and dependents, whatever may be the motive for so doing. is a perversion of the trust character of the estate the same as if the deposit had been made to the personal credit of the guardian. In both cases there is an obliteration of the trust character of the fund and the vesting of legal title thereto in an individual other than the party designated by law to have the control and custody of the fund.

If, when the funds have been deposited to the personal credit of a guardian and loss occurs, the guardian is not permitted to deny liability, there is no good reason why he should not also be held accountable when the funds are deposited in the name of a third party, and a loss occurs without any fault or negligence on the part of the guardian.

Our conclusion is that any deposit of a trust fund made by guardian other than in the name of the trust estate, and without indicating his representative character, renders the guardian liable to account to the ward for the loss of the funds in case of failure by the bank in which the fund has been deposited.

In the case of In re Wood's Estate, 159 Cal. 466, 114 Pac. 992, it is said:

"A guardian who, in selecting a bank for the temporary deposit of trust funds exercises such care as a man of ordinary skill and prudence would in the management of his own business, and so earmarks the deposit as to show its trust character, is not responsible if the bank fails, though he is generally liable if he deposits the money in his individual name without any indication of his representative character, notwithstanding he is guilty of no negligence."

See, also, Schmidt v. Shaver, 89 Am. St. Rep. 297.

It is next contended that the trial court erred in not crediting the guardian with er-

penditures for the support and maintenance of the minor, Levi Scott Clark, during the term of the guardianship, although the guardian made no request therefor.

Undoubtedly there are circumstances in which the probate court would be justified in making an allowance to the mother of a minor child to cover expenditures made for the board and maintenance of such child out of the estate of the minor if applied for by the parent, but in this case, if exceptional circumstances existed authorizing the probate court to make such allowance, notwithstanding the legal duty and obligation resting upon the mother to support her minor child residing with her, the mother has not seen fit to make any charge therefor and has elected to support her child and ward out of her own means.

We think the court should look with favor upon the discharge of legal obligations by parents for the support of their minor children out of their own means, so as to conserve the estates of these dependents for their benefit upon arrival at majority. In this case it would seem that no great hardship resulted to the parent by reason of her furnishing board and maintenance to her minor son, in view of the fact as found by the trial court that the upkeep of the minor son was largely paid for by his own efforts with other members of the family, in growing and producing farm products which were consumed in the upkeep of the entire family.

It is generally held that a mother, who is also guardian, may, if she chooses, support her minor child out of her own means, and if she so elects, it does not lie in the mouth of anyone else to complain.

In Donnell et al. v. Dansby et al., 58 Okla. 165, 159 Pac. 317, it is said:

"* * * The father was entitled to the custody, services, and earnings of plaintiffs during their minority (section 4368, Rev. Laws 1910), and was charged by law with the duty to support and educate them in a manner suitable to their circumstances (section 4367) ; and, if he could not reasonably afford to maintain and educate them in keeping therewith, he might, under the direction of the county court, defray the expense of such maintenance and education from the income of their individual property (section 6535), but the authority given by this section does not authorize the payment thereof from the corpus of the estate, in other words, from the capital. Being entitled to the services and earnings of the plaintiffs, and the duty to educate and maintain them being imposed upon him by law, and not having made any claim for such allowances in his lifetime, the sureties in this action cannot make such claim for him. To have entitled him to credit, the expenditures must have been made under the direction of the county court, and no claim is made that such authority was obtained.* * *"

In Hutson v. Jenson, 110 Wis. 26, 85 N. W. 689, it is said:

"A mother who was also guardian of her minor children filed a report stating that all of said minors were living with her, and that she made no charge at that time on account of expenses, such as board and clothing, for any of the wards, and they continued to reside with her until her death, six months later, without her having receded from such expressed intentions. The sureties on the guardian's bond were not entitled to an allowance for such board and clothing, when sued for a balance due from their principal."

See, also, 28 Corpus Juris, pages 1118 and 1119.

From an examination of the entire record, we are of the opinion that the judgment of the trial court is correct and should be and is hereby affirmed.

By the Court: It is so ordered.